332 So.2d 755 (1976)
STATE of Louisiana
v.
Harriet Marie JACKSON.
No. 57307.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 18, 1976.
Ronald J. Rakosky, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenheiner, Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was indicted, tried and convicted of aggravated burglary, a violation of R.S. 14:60. She was sentenced to twelve years imprisonment at hard labor. From this conviction and sentence she appeals, raising a single assignment of error.
On July 16, 1973 Dana Ashley Magee, a young baby, was forcefully taken from her home by two armed and disguised men.
*756 They also took money and weapons belonging to the Magees, and departed in the Magees' automobile. They were chased by law enforcement officials and, as a result of this chase, one of the kidnappers was killed and another captured. Ultimately, two other men who had participated were captured. The child was returned unharmed.
Defendant, a part time domestic worker for the Magees, was indicted as a principal because she allegedly allowed two of the kidnappers into the guest residence of the Magee home the day before the kidnapping where they waited until the planned time.
On August 21, 1973 the grand jury for the Parish of Concordia returned true bills against defendant for aggravated kidnapping, armed robbery and criminal conspiracy. She was tried on January 14, 1974 for aggravated kidnapping. After a four day trial, the jury returned a responsive verdict of guilty of simple kidnapping. She was sentenced to five years imprisonment and a fine of $2000.
From her conviction and sentence, she appealed to this court. Due to the erroneous admission into evidence of a confession obtained in violation of her Sixth Amendment right to counsel as announced in Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964), we reversed and vacated the conviction and sentence. State v. Jackson, 303 So.2d 734 (La.1974).
On remand, the grand jury was again convened, and on April 9, 1975 it returned true bills against defendant for aggravated burglary, armed robbery and aggravated kidnapping. She was tried on September 15, 1975 on the charge of aggravated burglary. A verdict of guilty was returned and defendant was sentenced to twelve years imprisonment at hard labor with credit for time served.
Defendant's conviction of aggravated burglary was not barred by double jeopardy due to her earlier but never final conviction of simple kidnapping.
The Fifth Amendment to the federal Constitution provides the following prohibition: ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."
Similarly, Art. 1, § 15 of the Louisiana Constitution of 1974 provides: ". . . No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained."
In Ball v. United States, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), the United States Supreme Court held that the effects of double jeopardy do not attach to a conviction overturned on appeal:
". . . it is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted...."
We recognized this principle early. State v. McGarrity, 140 La. 436, 73 So. 259 (1916); State v. Walters, 16 La.Ann. 400 (1862). It is recognized in the language of Louisiana's current Constitution: ". . . except on his application for a new trial . . .;" and the legislature has codified it in C.Cr.P. 591.
Thus, defendant's conviction for simple kidnapping, reversed on appeal, cannot form the basis for her claim of double jeopardy.
Nor does the doctrine of collateral estoppel prohibit defendant's second trial. Collateral estoppel applies when an issue of ultimate fact has once been determined by a valid and final judgment; that issue cannot again be litigated between the same parties in any future lawsuit. Ashe v. *757 Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).
Although defendant appealed her conviction of simple kidnapping, the fact that the jury returned the lesser included verdict to the charge of aggravated kidnapping constitutes a final acquittal on the more serious charge. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed. 2d 199 (1957); C.Cr.P. 598. Thus, the effects of collateral estoppel apply to those elements which differentiate aggravated kidnapping from simple kidnapping, aspects which are not essential to the crime of aggravated burglary.
However, because of grounds raised by defendant during the motion to quash and at oral argument before this court, our inquiry does not end here.
Defendant contends the increased penalty imposed after her second trial contravened the due process clause of the Fourteenth Amendment. Her argument derives substantially from North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).
In the former case, Pearce successfully attacked his first conviction and the sentence imposed thereunder. On retrial for the same offense, Pearce was again convicted, but a harsher sentence was imposed and no reasons were given for the increase. Concerned that the unexplained increase in sentence might evidence vindictiveness by the sentencing court, the Supreme Court found that this procedure unconstitutionally deterred Pearce's right to appeal or attack collaterally the first conviction:
"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U.S. 711, 725-726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656.
Following North Carolina v. Pearce, supra, there were other similar attacks: Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); and, more recently, Blackledge v. Perry, supra.
Perry was a North Carolina prison inmate who became involved in an altercation with another inmate and was subsequently charged and convicted of assault with a deadly weapon, classified a misdemeanor. He was sentenced to six months imprisonment to be served after completion of the prison term he was then serving. Under North Carolina law, defendant had a right to appeal by a trial de novo in which the prosecution and defense would begin anew, the former conviction being automatically annulled. After Perry filed his notice of appeal, the prosecutor obtained an indictment charging Perry with the felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury. This indictment covered the same *758 conduct upon which Perry had been convicted in the misdemeanor prosecution. To this increased charge Perry pleaded guilty and a sentence was imposed incarcerating him for seventeen months beyond the expiration of the term he was then serving.
The United States Supreme Court granted writs to decide whether the opportunity for vindictiveness in the Perry situation required a rule analogous to that of North Carolina v. Pearce, supra. Though no evidence was adduced tending to show the prosecutor acted in bad faith, the court noted that the reasoning of Pearce was to avoid the undue "fear of such vindictiveness." The court held:
". . . A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.
. . . . . .
"Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo." 417 U.S. 21, 28-29, 94 S.Ct. 2098, 2102-2103, 40 L.Ed.2d 628.
The court further said that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of `vindictiveness.'" (417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628).
In the case before us we find no such likelihood of vindictiveness. In basing defendant's second trial on the aggravated burglary count rather than the simple kidnapping count the prosecutor was not "raising the ante" because defendant had taken a successful appeal; he was making essentially the same selection he might have made had defendant's appeal been unsuccessful.
Also, the glaring defect in the trial court's action in Pearce and the prosecutor's action in Perry was the lack of apparent legitimate reason for the increased penalty to which the defendant was or could be subjected.
There was a substantial reason for the prosecutor's presenting this case to a new grand jury and obtaining new indictments in 1975. The Louisiana Constitution of 1974, effective December 31, 1974, and the repeal of C.Cr.P. 402 by Act 20 of Ex. Sess. of 1974, effective January 1, 1975, prevented discrimination against women in the composition of juries. New indictments obviated lurking issues about the composition of the grand jury which had returned the original indictment in 1973.
Though at the time of her first trial the defendant before us could have been tried for one offense in one indictment,[1] at the time of her second trial she could have been tried on an indictment containing both the simple kidnapping count and the aggravated burglary count.[2] This would have subjected her to the possibility of a harsher sentence. The fact that the prosecutor *759 chose to try her for only one crime indicates an absence of vindictiveness. The "likelihood of vindictiveness" prohibited in Pearce and Perry is absent from the prosecutorial procedure in the case before us.
Defendant argues that she "is being punished, not for appealing, but for succeeding in her appeal." The basis of the argument is the assumption that, if Harriet Jackson had permitted the simple kidnapping judgment to become final, the doctrine of double jeopardy would have protected her from a subsequent prosecution for aggravated burglary based on the same evidence and the same conduct.
The argument is hypothetical, and we need not answer it. The kidnapping judgment did not become final. The problem need not arise again, because of the change in our statutory law permitting the joinder of offenses in the same indictment in a' separate count for each offense. C.Cr.P. 493 as amended by Act 528 of 1975. Our statutes now permit the joinder of different, but connected offenses in the same bill, and the problem of deciding which of several possible offenses should be first brought to trial, under our procedural statutes, is now answered. The defendant does not argue the joinder of different, related, offenses in one trial is subject to successful constitutional attack.
For these reasons, the conviction and sentence are affirmed.
TATE, J., dissents and assigns written reasons.
CALOGERO, J., dissents for reasons assigned by TATE, J.
TATE, Justice (dissenting).
I respectfully dissent.
The defendant was originally charged with aggravated kidnapping (punishable by life imprisonment), but she was then convicted of simple kidnapping. She was sentenced to five years at hard labor.
Had we affirmed her conviction, she could not have been charged with aggravated burglary (her present conviction, for which she was sentenced to twelve years at hard labor): The burglary was the method by which the kidnapping was committed; the evidence as to the burglary was the identical evidence used to prove a necessary step in the kidnapping conviction; double jeopardy prevents re-trial for a second offense essentially included within the commission of the first offense. State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974).
However, unfortunately for the defendant, her initial conviction of simple kidnapping (for which she received a sentence of five years) was reversed, 303 So.2d 734 (La.1974); for, according to the state's theory (accepted by the majority), this reversal leaves the state free to prosecute her on the burglary charge in order that she may receive a more severe penalty than the sentence received on her invalidated initial conviction.
Federal and state due process and double jeopardy principles of constitutional basis forbid the state from using a successful appeal as a basis for instituting prosecution for more severe and heavily punishable offenses than that for which she was originally convicted. Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 94 S.Ct. 2098, 40 L. Ed.2d 628 (1974); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656 (1969); State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1974).
The very purpose of these traditional constitutional restrictions is to prevent the state, when dissatisfied with a jury verdict acquitting of more serious conduct or with a judicial sentence imposed as too light, from recharacterizing the conduct originally charged, in order to try an accused again to secure a heavier penalty (for the same conduct) than that initially imposed.
*760 The majority ignores these traditional principles in permitting this prosecution for a more serious offense than that of which the accused was initially convicted, simply because she obtained a reversal of that original conviction on the ground that her constitutional rights had been violated by it.
I respectfully dissent.
NOTES
[1] Defendant's first trial occurred on January 14, 1974. At that time only one charge could be included in a single bill of indictment or information, unless specifically excepted by statute, and contemporaneously committed crimes could not be charged in separated bills and then consolidated for trial unless the defendant consented and the charges could have been brought initially in a single bill of indictment. State v. Richmond, 284 So.2d 317 (La.1973); C.Cr.P. 491-493, 706.
[2] Defendant's second trial occurred on September 15, 1975. At that time C.Cr.P. 491 and 492 had been repealed, and 493 had been amended to allow such joinder. See Acts 1975, No. 528, effective September 12, 1975.