**Harriet Marie JACKSON**

v.

**Victor G. WALKER, Warden, Louisiana Correctional Institute for Women.**

**Civ. A. No. 761010.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Sept. 30, 1977.

Opinion After Record Completed
May 27, 1977.

708

Ronald J. Rakosky, New Orleans, La., Henry C. Walker, IV, Shreveport, La., for petitioner.

W. C. Falkenheiner, Dist. Atty., Seventh Judicial Dist., Vidalia, La., for respondent.

## MEMORANDUM ORDER

DAWKINS, Senior District Judge.

Harriet Marie Jackson, through retained counsel, on September 21, 1976 filed a petition for a writ of *habeas corpus*, with service of process being made on the District Attorney for Concordia Parish, Louisiana.

Petitioner alleges she is held illegally in the Louisiana Correctional Institute for Women, St. Gabriel, Louisiana, after a jury trial, conviction, and twelve-year hard-labor sentence imposed on November 5, 1975 by the Seventh Judicial District Court, Concordia Parish, Louisiana, for the crime of aggravated burglary.

Jackson alleges she has exhausted her remedies through the State Judiciary through appeal to the Louisiana Supreme Court which affirmed the judgment of the Trial Court on May 17, 1976, *State of Louisiana v. Jackson*, La., 332 So.2d 755, Reh. Denied June 18, 1976, where the same contention alleged in her petition before us was ruled upon by the State Trial Court and the State Supreme Court.

Petitioner's sole contention is that she was denied due process of law and equal protection of the law by being prosecuted twice for the same sequence of criminal conduct, constituting double jeopardy and prosecutorial vindictiveness. She alleges that this second prosecution, trial and conviction were in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

Petitioner alleges that, as a result of a kidnapping which occurred in Concordia Parish on July 16, 1973, an indictment was returned against her and three other defendants on August 21, 1973 in which they were charged with aggravated kidnapping, criminal conspiracy, and armed robbery; that petitioner in January 1974 was tried on the indictment for aggravated kidnapping, a capital offense. After trial, she was convicted by the jury of simple kidnapping and the maximum sentence of five years imprisonment was imposed by the Court, plus a fine of $2,000. On appeal, the Louisiana Supreme Court reversed the conviction, set aside the sentence, and remanded the case for a new trial. *State of Louisiana v. Jackson*, La., 303 So.2d 734, (Oct. 28, 1974, reh. denied Nov. 27, 1974). In its order of reversal and remand, the Court held that the jury had acquitted petitioner of the capital offense of aggravated kidnapping and consequently, on remand she could be tried on the lesser included offense of simple kidnapping.

Petitioner never was retried on remand of the case on the charge of simple kidnapping. Instead, the State secured new indictments against her for aggravated kidnapping, armed robbery, and for the first time obtained an indictment for the crime of aggravated burglary. She was tried and convicted on the latter charge and received a twelve-year sentence which was affirmed by a majority decision of the Louisiana Supreme Court.

This appears to present purely a question of law, and pursuant to 28 U.S.C. § 2254(e), (f), we direct the State, through its District Attorney for the Seventh Judicial District, Concordia Parish, Louisiana, to file that part of both records relative to the contention made by petitioner. In lieu thereof, if plaintiff and respondent may agree on a stipulation of facts relative to the trial and conviction of petitioner in each of the cases, it will not be necessary to file that part of the record. Respondent is to file with this Court an answer and brief within twenty (20) days. Petitioner is granted fifteen (15) days from date of receipt of respondent's brief to file a rebuttal brief with this Court.

## RULING

### OPINION AFTER RECORD COMPLETED

On September 30, 1976 we directed the State, through its District Attorney for the Seventh Judicial District, Concordia Parish, Louisiana, to file that part of both records relative to the contentions made by petitioner; or in lieu thereof, if petitioner and respondent could agree upon a stipulation of facts relative to petitioner's trial and conviction in each of two cases, wherein she was convicted and sentenced, it would be unnecessary to file that part of the record.

Respondent has filed an answer supported by brief, and also has filed the complete record in the second case, together with the same brief filed in the Louisiana Supreme Court on its appeal. Petitioner has filed a reply brief.

■ Petitioner has exhausted her remedies through the State Judiciary, through appeal of her conviction to the Louisiana Supreme Court where she made the same contentions she now presents. *State of Louisiana v. Jackson*, La., 332 So.2d 755, Reh. Den. June 18, 1976. There her conviction was affirmed and we are authorized to entertain her petition. *Francisco v. Gathright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Graves v. State of Louisiana*, 472 F.2d 1191 (5th Cir., 1973); *Lee v. Wainwright*, 468 F.2d 809 (5th Cir., 1972), and *Brown v. Allen* (1953), 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

Though stated in different ways by petitioner and respondent, they are in agreement as to the facts and procedural history of the case, as also set forth by the State Supreme Court in its decision on appeal.

■ Inasmuch as the record now has been received, we may resolve the merits of this *habeas* application upon the basis of the State Court record, which provides petitioner with the equivalent of a full and fair evidentiary hearing. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and *Dempsey v. Wainwright*, 471 F.2d 604 (5th Cir., 1973), cert. den., 411 U.S. 968, 93 S.Ct. 2158, 36 L.Ed.2d 690.

Briefly stated, the facts are that on July 16, 1973 Dana Ashley Magee, a young baby, was taken forcibly from her home by two armed, disguised men. They had been secreted in an adjoining guesthouse and allegedly with defendant's full knowledge, remained there earlier in the night, later entering the Magee home through a door left unlocked by defendant. At gunpoint, they also took money and weapons belonging to the family, departing in the Magee automobile with the kidnapped child, almost immediately followed by law enforcement officials. During the chase, one of the kidnappers was killed and the other captured. Ultimately, two other men who had participated were captured. Most fortunately, the child was returned unharmed.

Petitioner, a domestic worker for the Magees, was indicted as a "principal" for her participation in the planning and subse-

quent crimes committed by the other co-defendants.

■ In her brief, petitioner states that a single issue now is before this court: "Whether the State's charging and trial of petitioner for this burglary offense deprived her of due process of law within the meaning of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, [40 L.Ed.2d 628]."

Respondent contends that the issue is one of law *and* fact "as to whether or not Jackson committed one offense (kidnapping) as she alleges, or whether or not she committed a series of offenses in one episode as alleged by the State."

The case's procedural history shows that on August 21, 1973, a grand jury for Concordia Parish, Louisiana, returned true bills against defendant for aggravated kidnapping, armed robbery, and criminal conspiracy. She was tried on January 14, 1974 for "aggravated kidnapping". After a four-day trial, the jury returned a responsive lesser included verdict of guilty of "simple kidnapping". The trial judge imposed the maximum sentence of five years imprisonment and a fine of $2,000.

From this conviction and sentence she appealed. The State Supreme Court, in a 4–3 decision, reversed and vacated. *State of Louisiana v. Jackson*, 303 So.2d 734, Reh. Den. Nov. 27, 1974. The reversal was on the ground that her second police interrogation on videotape, admitted in evidence at trial, was made without an informed waiver of her right to assistance of counsel, after her family had retained counsel to represent her, a fact as to which her interrogators were aware, under the rationale of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The Court's language was, "This statement was taken after, unknown to her, her family had retained an attorney to represent her . . It was taken in the face of a request from her newly-retained counsel that no further interrogation of her be made until he could consult with his client and thus is inadmissible by reason of . . . [*Escobedo*] . . . No knowing and intelligent waiver of the assistance of counsel was made,

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 . . . since the interrogating officers deliberately withheld from the defendant the information . .." about her attorney's telephone call from New Orleans. The case was remanded for a new trial "in accordance with law".

Thereafter, instead of re-trying petitioner on a simple kidnapping charge, on April 9, 1975 petitioner was indicted for the crimes of aggravated burglary, armed robbery and aggravated kidnapping. She was tried on September 15, 1975 on the charge of aggravated burglary. The jury convicted her on this charge and she was sentenced to twelve years imprisonment, with credit for time served.

■ Petitioner and respondent are in agreement that, as to her first trial and first confession, in light of the fact that the jury returned the lesser included verdict of simple kidnapping to the charge of aggravated kidnapping, this constituted a final acquittal on the more serious charge, under principles of double jeopardy. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). However, in its affirmance of petitioner's conviction on the aggravated burglary charge, the majority of the State Supreme Court held there was no double jeopardy and no collateral estoppel. The Court said, in effect, that collateral estoppel applies only to those elements which differentiate aggravated kidnapping from simple kidnapping, and that these are not essential to the elements involved in the crime of aggravated burglary.

■ Upon appeal of her conviction and sentence for aggravated burglary, these were affirmed by the Louisiana Supreme Court in a majority opinion (332 So.2d 755). Of course, we are not bound by the State Courts' determination of a federal constitutional question; but must follow rulings by the United States Supreme Court in such matters. Justices Tate and Calogero dissented, their views being that "Federal and state due process and double jeopardy principles of constitutional basis forbid the state from using a successful appeal as a basis for

instituting prosecution for more severe and heavily punishable offenses than that for which she was originally convicted", citing *Blackledge v. Perry, supra; North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Bonfanti*, 262 La. 153, 262 So.2d 504 (1974).

Petitioner makes no contention here as to double jeopardy. Instead, she urges that the new indictment for aggravated burglary, her conviction and twelve-year sentence, deprived her of due process of law in violation of the Fifth Amendment, applicable to the State through the Fourteenth Amendment. Respondent argues that *Blackledge* is not applicable to Louisiana inasmuch as Louisiana does not have a two-tiered trial system, such as was involved in that case. It further is argued that Louisiana does not require application of the *Blackledge* and *Pearce* doctrine in view of the decision of the Louisiana Supreme Court in *State of Louisiana v. Suire*, 319 So.2d 347 (Sept. 5, 1975). All that case holds, however, is that the Louisiana Supreme Court upheld the State District Court on defendant's contention of double jeopardy.

As noted above, procedural history of this case shows that in 1973 petitioner was indicted on charges of aggravated kidnapping, armed robbery and criminal conspiracy. Approximately a year and eight months later she was indicted for armed robbery, aggravated kidnapping, and the new charge of aggravated burglary.

Respondent does not state why petitioner was not tried on the indictments for armed robbery and criminal conspiracy. As all parties agree, on the reindictment for aggravated kidnapping, she could be tried only for the crime of simple kidnapping, inasmuch as she had been acquitted of the more serious charge. The State Supreme Court, in affirming petitioner's conviction and sentence on the aggravated burglary charge, held there was no evidence of vindictiveness on the part of the prosecution; therefore, the enhancement of sentence was not the result of petitioner's being successful in her appeal of the kidnapping case, notwithstanding the same prosecutor and

the same judge handled both cases. In *Blackledge*, the Supreme Court said,

"The lesson that emerges from *Pearce, Colten*, [*Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584] and *Chaffin* [*Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714] is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' Unlike the circumstances presented by those cases, however, in the situation here the central figure is not the judge or the jury but the prosecutor. The question is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case. We conclude that the answer must be in the affirmative.

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.

"There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first con-

viction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' 395 U.S. at 725, 89 S.Ct. at 2080. We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.[6] Cf. *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138.

"Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two-tiered appellate process. We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*.[7]

[7] This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset, as in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death." (Footnote 6 omitted as *dictum*.)

We, too, find no evidence of actual malice or bad faith on the part of the prosecutor or trial judge. Notwithstanding, being bound by the quoted rationale in *Blackledge*, we find that this second prosecution of petitioner *on a new charge, based upon her same conduct* as in the kidnapping convic-

tion which she successfully appealed, constituted a violation of the due process clause of the Fifth Amendment, as made applicable to the State through the Fourteenth Amendment. This is especially true when it is considered that all the facts were known to the prosecution in the early stages when petitioner first was indicted for her participation in the series of events upon which the various charges are based. As shown, *Blackledge* and *Pearce* hold that it is the *appearance* of vindictiveness, even absent a showing of actual malice, which would deny a defendant the right to appeal without suffering more severe penalties at a second trial on new charges, which is a violation of due process.

THEREFORE, IT IS ORDERED that petitioner's conviction and twelve-year sentence, imposed upon her for the crime of aggravated burglary, be vacated and set aside. The State may re-try her within sixty (60) days, for simple kidnapping, unless the time she already has served has mooted the issue; and unless State law otherwise provides. See, *e.g.*, Article 578 La.C.Crim.P. But see Article 579(2), last clause, and Article 582. Interpretation and application of these Criminal Code Articles is for the State District Court. See *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911) and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).