**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Herman V. KREZDORN, Defendant-Appellee.**

**No. 81–1404.**

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1983.

Certiorari Denied Feb. 27, 1984. See 104 S.Ct. 1416.

John E. Murphy, Sidney Powell, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellant.

Verne F. Knickerbocker, Eagle Pass, Tex., Paul E. Knisely, Austin, Tex., for defendant-appellee.

Before CLARK, Chief Judge, BROWN, GOLDBERG, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges [*].

CLARK, Chief Judge:

A prima facie case of prosecutorial vindictiveness arising from proof of the addition of a charge on remand following a successful appeal that suggested the added charge as a method of curing the error found may be rebutted by a factual showing of no vindictiveness. Despite findings of fact indicating that the prosecutor did not act vindictively, the district court dismissed the added charge. We reverse that dismissal and remand for further proceedings.

I

In the original indictment in this cause, Herman V. Krezdorn was charged in five separate substantive counts with forging another inspector's signature on Mexican border-crossing card applications for five members of the Ruiz family. The district court directed an acquittal on one count and the jury convicted Krezdorn on the remaining four counts. This court reversed Krezdorn's convictions. *United States v. Krezdorn*, 639 F.2d 1327 (5th Cir. 1981). We held that the district court erred in admitting evidence of thirty-two additional forged border-crossing card applications allegedly prepared by Krezdorn but not charged in the indictment. Proof of the uncharged forgeries was ruled inadmissible under Fed.R.Evid. 404(b). A plan was not an element of the offense charged. Therefore, the forgeries were not included in the "plan or scheme" exception to the general rule that evidence of a defendant's "other crimes" is inadmissible. 639 F.2d at 1331. However, dicta in our opinion observed that "[t]he existence of a plan would be directly at issue in, for instance, a conspiracy charge." *Id.* at 1331 n. 7.

Upon remand, Krezdorn was reindicted on the four counts upon which he had previously been convicted. Krezdorn was also indicted for conspiracy to forge immigration documents in violation of 18 U.S.C. § 371. The superseding indictment charged that Krezdorn conspired with Arnulfo Contreras to forge signatures on the five cards sold to the Ruiz family. The forgeries in the substantive counts were charged to be the overt acts in furtherance of the conspiracy. The new conspiracy charge increased by five years of imprisonment and $10,000 in fines the potential penalties that could be assessed under the four original counts.

Following an evidentiary hearing, the district court granted Krezdorn's motion and dismissed the conspiracy count. The court made the following findings of fact:

> Because two prosecutors were involved in the case at various times, it is unclear exactly what evidence was in the possession of the government at the time that the original indictment was returned. Nevertheless, it is clear that the government knew of the involvement of Arnulfo Contreras prior to the return of the original indictment. The government decided not to indict Contreras originally, because he was a Mexican citizen; consequently, the government knew he could never be

[*] Judge Jerre S. Williams recused himself and did not participate in this decision.

extradicted and, if indicted, would simply clutter up court records as a fugitive.

In having the superseding indictment returned, the government was not concerned with increasing the amount of punishment to which the defendant would be exposed. It is the prosecutor's impression that, even if the defendant is convicted of the conspiracy offense, he will not receive any punishment in excess of what he received after the first trial.*

The primary, if not sole, purpose of the government in having a superseding indictment returned was to overcome the Fifth Circuit's objection to the introduction of the 32 extraneous forgeries. The government's purpose was to make evidence of these extraneous forgeries admissible as overt acts in a conspiracy between the defendant and Contreras.

---

* The prosecutor did not gain this impression by any communication from the court.

The court concluded that Krezdorn established a prima facie case of prosecutorial vindictiveness that the government failed to rebut. A panel of this court affirmed the district court's decision. *United States v. Krezdorn,* 693 F.2d 1221 (5th Cir.1982).

The panel held that a presumption of prosecutorial vindictiveness arising from the substitution of "charges which increase the punishment to which a defendant is exposed for the same basic conduct" may be rebutted "only by showing that the decision to charge conspiracy was based upon new facts or evidence not known to the Government at the time of the original indictment." 693 F.2d at 1229–30. This holding was vacated by our action granting rehearing en banc. 5th Cir.Loc.R. 41.3.

The panel erroneously assumed that the original indictment charged Krezdorn with conspiring to forge the Ruiz border crossing applications. 693 F.2d at 1230. On this assumption, it held that the prosecutor had merely substituted a more serious charge for "the same basic criminal behavior." It held that the presumption of prosecutorial vindictiveness could only be overcome by proof of circumstances that did not exist at the time of the original indictment.

## II

Prior precedents in the area of judicial and prosecutorial vindictiveness have detailed the prior opinions of the Supreme Court of the United States and this court. To focus the reader's recall here, it is not necessary to review those holdings in depth.

*North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), held that an increased sentence imposed by a judge on retrial following appeal gives rise to a presumption of vindictiveness, which may unconstitutionally deter a defendant's due process right to appeal. To free the defendant of any apprehension that such a retaliatory motivation exists, the presumption can only be rebutted by requiring the judge to affirmatively state in the record reasons for his increased sentence based on information concerning objective, identifiable conduct occurring after the original sentence. *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), held that a judge's imposition of an increased fine after appeal and retrial does not give rise to a presumption of vindictiveness when it occurs in the setting of a two-tier trial de novo system applicable to less severe crimes. In *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), a jury imposed an increased sentence on retrial. The Court held this action raised no presumption of vindictiveness. The Court reasoned that the second jury had no knowledge of the first sentence and no stake in acting to deter appeals.

In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the prosecutor changed a misdemeanor charge to a felony charge after a convicted defendant obtained a trial de novo. The Court held the prosecutor's action raised a presumption of vindictiveness that could only be rebutted by proof that the felony charge could not have been brought at the outset. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), held that a prosecutor's action in obtaining added charges when a defendant refused to plead gave rise to no presumption of vindictiveness.

The Court observed that the action had occurred before trial and during plea bargain talks. In *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Court held that no presumption of vindictiveness was created when a United States attorney, acting before trial, obtained a felony indictment following the defendant's refusal to plead guilty to misdemeanor charges. The Court observed that there was the same "opportunity for vindictiveness" as had been present in *Colten* and *Chaffin,* which held such opportunity insufficient to justify the imposition of a prophylactic rule. Relying on the following quotation from *Blackledge,* the Court required the defendant to prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for pursuing his appellate rights:

> [T]he Due Process Clause is not offended by all possibilities of increased punishment ... but only by those that impose a realistic likelihood of "vindictiveness."

417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d 628.

The Fifth Circuit's most extensive consideration of prosecutorial vindictiveness occurred in two prior cases. *Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), was the first. After Hardwick's initial convictions on one robbery count and one assault count were set aside, the prosecutor obtained two robbery and two assault charges growing out of the same "spree of activities." The court distinguished *Blackledge* as involving the substitution of a more serious charge rather than the bringing of a new charge, and held that vindictiveness in fact was required to overcome the prosecutor's discretion. *Hardwick* also relied on the breadth of the prosecutor's charge decision discretion established in *United States v. Cox,* 342 F.2d 167 (5th Cir.) (en banc), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

Rather than use the procedural terminology of presumption and rebuttal, *Hardwick* spoke of a prima facie case made by showing the increase in charges, which the prosecutor could rebut by establishing that his reasons were other than to "punish a pesky defendant for exercising his legal rights." 558 F.2d at 301. The court expressly stated that the prosecutor could negate vindictiveness by proof of mistake or oversight in his initial action, a different approach to prosecutorial duty by a successor prosecutor, or public demand for prosecution on additional crimes allegedly committed, a list the court noted was illustrative rather than exhaustive.

*Jackson v. Walker,* 585 F.2d 139 (5th Cir. 1978), was a case in which a mix of three charges for "the same basic conduct" was changed after appellate reversal. *Jackson* added to *Hardwick's* prima facie/rebuttal procedure a balancing test that required weighing a defendant's due process right to an unfettered appeal against the prosecutor's broad discretion to make charging decisions. This balancing was to be used to determine whether rebuttal proof must show changed circumstances since the original decision, or whether rebuttal could be made by a showing of no vindictiveness in fact. The balancing in *Jackson* allowed rebuttal by showing no actual vindictiveness because (1) the prosecutor had chosen to prosecute only one of the new mix of charges, a charge less severe than the single charge originally selected for prosecution, and (2) the prosecutor asked the court to impose less than the maximum sentence after conviction.

### III

The judicial history of decisions involving judicial and prosecutorial vindictiveness is now clear enough to teach that it is a mistake to measure cases in this area of the law against fixed gauges. The proper solution is not to be found by classifying prosecutorial decisions as changing or adding charges, as amending decisions already made, as covering the same basic conduct or spree of activity, or as being made pre- or post-trial. Nor is it determinative whether the procedural matrix is appeal and error or trial de novo. It is also unnecessary to seek

to strike the delicate balance between the rights of defendant and prosecutor. The surer solution lies in applying a more familiar, less exact test.

■ If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion.

## IV

■ Krezdorn's case falls in the former category. The district court found that the "primary, if not sole, purpose of the government in having a superseding indictment returned was to overcome the Fifth Circuit's objection to the introduction of the 32 extraneous forgeries." This finding establishes that a reasonable minded defendant should have appreciated that the prosecutor's actions were taken to pursue a course indicated by the appellate opinion rather than to impose a penalty on Krezdorn for having exercised his right of appeal. Furthermore, the district court accepted the prosecutor's representation that it did not believe the additional charge would result in Krezdorn receiving a sentence greater than the one initially imposed. Under the test we conclude should have been applied, these two findings constitute sufficient proof to establish that there was no prosecutorial vindictiveness. The district judge's legal conclusion to the contrary is in error.

■ The district court also concluded that the government's purpose in seeking the superseding indictment was "getting around" an evidentiary obstacle created by the appeal. As the panel expressed it, "[T]he prosecutor is attempting to turn a successful appeal into a pyrrhic victory." 693 F.2d at 1231. This is wrong. In Krezdorn's original appeal we were presented with a claim of evidentiary error. In response to that claim, we ruled that Krezdorn's four convictions must be reversed. Although we observed that the proof admitted in error might have been proper if Krezdorn were charged with conspiracy, we did not rule whether the prosecutor could exercise his discretion to add such a charge. Krezdorn's appellate victory vindicated his right not to be convicted of the substantive counts based on improper evidence. He now stands an innocent man. However, his assertedly felonious conduct is still subject to another trial—a process that certainly contemplates the proper exercise of prosecutorial discretion. It confuses the evidentiary principle vindicated by the appeal and the independence of the prosecutorial function—a matter not before the prior panel— to reason that the subsequent addition of the suggested conspiracy charge deprived him of his prior appellate success.

The decision of the district court is reversed and the cause is remanded with directions to proceed with Krezdorn's retrial on the remaining substantive counts and the added conspiracy charge.

REVERSED and REMANDED.

GOLDBERG, Circuit Judge, with whom POLITZ, Circuit Judge, joins, dissenting:

The concept of prosecutorial vindictiveness potentially encompasses all prosecutorial action at every stage of a criminal proceeding. Because the balance of interests between the defendant and the State is shifting throughout the proceeding, it is hardly surprising that no satisfactory standard for assessing allegations of vindictiveness has been devised. Instead of attempting to develop a single standard to control vindictiveness, courts should, following *Goodwin,* recognize the critical differences between pretrial and posttrial prosecutorial vindictiveness. If courts take account of this distinction, and adopt a prophylactic rule to protect the defendants' overriding interests during the posttrial period, they will spare defendants the "grisly choice" imposed by the risk of posttrial vindictiveness.

Note, *Prosecutorial Vindictiveness in the Criminal Appellate Process: Due Process Protection After* United States v. Goodwin, 81 Mich.L.Rev. 192, 200 (1982) (footnote omitted) [hereinafter cited as Michigan Note]. Because the majority of the Fifth Circuit today decides to ignore the critical importance of the defendants' interests in the posttrial period and put defendants to the "grisly choice" [1] I must respectfully dissent.

I present an argument now slightly different from that of the panel opinion. First, the Court sitting en banc need not attempt to harmonize old Fifth Circuit precedent. Second, subsequent to the panel opinion I became aware of the Michigan Note cited above, and I am completely persuaded by the thoughtful analysis it offers.

The problem of potential prosecutorial vindictiveness has troubled the court for years. It places in conflict two principles central to our criminal justice system. On one hand, criminal defendants should be free to exercise their legal rights; on the other hand, the prosecutor's function requires considerable discretion in indicting, plea bargaining, prosecuting, and so on.

The conflict between these two competing goals has led courts to articulate ad hoc, case-by-case rules and has generated unfortunate misnomers that have clouded reasoned discussion of the actual issues. Recently, however, the Supreme Court in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), articulated a uniform treatment that eliminates the need for ad hoc decisionmaking. In order to understand *Goodwin* adequately, I must first place it in context by discussing the Supreme Court cases preceding it. Then I shall discuss the impact of *Goodwin* on these earlier decisions. Finally, I shall explain the result I believe *Goodwin* dictates in this case.

## I. EVOLUTION OF A DOCTRINE

The basic problem addressed under the rubric of prosecutorial vindictiveness can be simply stated: What should a court do when a prosecutor takes a step harmful to a criminal defendant after that defendant exercises a legal right? The answer to this question varies depending on whether the reviewing court focuses on prosecutorial discretion and the desire to convict criminals, or on due process and the desire to protect individual rights. In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Supreme Court focused on due process values. In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court focused on prosecutorial discretion. These three cases resulted in a tension not resolved until *Goodwin.* I will discuss these three cases briefly.

### A. *Pearce, Blackledge, and Due Process*

An emphasis on the freedom of criminal defendants to exercise legal rights led the Supreme Court twice to prohibit actions harmful to criminal defendants after such an exercise. In *North Carolina v. Pearce, supra,* a criminal defendant successfully appealed his conviction. Upon retrial he was

---

**1.** Michigan Note, *supra,* at 200 n. 194.

given a more severe sentence than he had received at his first trial. The Supreme Court held that such an increase in punishment would be allowed only when the reason for the increase appears in the record, and that the reason "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081.

*Blackledge, supra,* extended the same basic idea to a prosecutor. In *Blackledge* the defendant was initially tried and convicted of a misdemeanor in state district court and exercised a statutory right to a trial de novo in the state superior court. The prosecutor then indicted the defendant on a felony charge for the same behavior. The *Blackledge* Court extended *Pearce* and held that the reindictment violated the due process clause. The Court also noted:

> This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset, as in *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death.

*Blackledge,* 417 U.S. at 29 n. 7, 94 S.Ct. at 2103 n. 7.

*Blackledge* used the phrase "prosecutorial vindictiveness" to describe the problem it sought to remedy. In retrospect, that was an unfortunate choice of words, because it suggests that the problem was merely one of renegade prosecutors attempting to punish valid assertions of constitutional rights. Indeed, due process clearly prohibits actual

vindictive punishment of a defendant's assertion of a constitutional right, but *Blackledge* saw "prosecutorial vindictiveness" as a much more systemic problem:

> [I]f the prosecutor has the means readily at hand to discourage such appeals—by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.
>
> There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S., at 725, 89 S.Ct. at 2080. We think it clear that the same considerations apply here.

*Id.* 417 U.S. at 27–28,[2] 94 S.Ct. at 2102.

Thus it is clear that the doctrine of prosecutorial vindictiveness in *Blackledge* was not intended to provide a remedy for past wrongs. Instead, it was intended to remove any deterrent bar to future defendants contemplating whether to assert a protected right. *Blackledge* stands squarely in the due process protecting mode.

## B. *Bordenkircher and Prosecutorial Discretion*

The Supreme Court's next word on the subject was in the prosecutorial discretion mode. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), held that there was no violation of due process when a prosecutor filed more severe

---

**2.** Perhaps to emphasize that it was referring to apprehension of vindictiveness rather than actual vindictiveness, the Court used the word

"vindictiveness" in quotes. *See, e.g.,* 417 U.S. at 26, 27, 94 S.Ct. at 2101, 2102.

charges after the defendant refused to plead guilty to lesser charges. *Bordenkircher* did not purport to overrule *Blackledge,* but rather chose to emphasize some factors *Blackledge* mentioned only in passing and to deemphasize some of the key points I just discussed from *Blackledge.*

Thus, in *Bordenkircher* the Court emphasized the societal interest in plea bargaining and the prosecutor's need for discretion in charging decisions. As a corollary, the Court placed less emphasis on the need to promote due process. In fact, the Court went so far as to state a slightly revisionist view of the thrust of *Blackledge:*

> The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, see *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584; *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. See *Blackledge v. Perry, supra,* 417 U.S., at 26–28, 94 S.Ct., at 2101–02.

*Id.* 434 U.S. at 363, 98 S.Ct. at 668. Needless to say, this is perhaps a less-than-faithful account of what *Blackledge* actually says on the cited pages. In any event, *Bordenkircher* quite clearly is a decision in the prosecutorial discretion mode.

### C. Confusion in the Circuits

After *Bordenkircher,* the prosecutorial vindictiveness doctrine was in disarray. *Blackledge* and *Bordenkircher* had articulated two distinct guiding principles, always in conflict, with both always present and neither carrying with it any intrinsic limiting precept. *Blackledge* stood for the right of criminal defendants to be free to exercise legal rights without fear of reprisals through vindictive exercises of prosecutorial discretion. *Bordenkircher* stood for the pragmatic recognition for the need of prosecutors to have discretion in bringing additional or different charges. The circuit courts had obvious and understandable difficulty in melding the two conflicting goals

of *Blackledge* and *Bordenkircher.* See generally, Michigan Note, *supra,* at 200–08. This situation remained unclear until *Goodwin.*

## II. *GOODWIN* TO THE RESCUE

### A. Reconciling Blackledge *and* Bordenkircher

In *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Supreme Court finally brought coherence to the field by harmonizing the two competing interests of free exercise of legal rights and the need for prosecutorial discretion. *Goodwin* accomplished this feat not by holding that one interest was of greater virtue than the other, but by recognizing that each interest has an area of primacy. *Goodwin* articulated a pretrial/posttrial distinction and held that in the pretrial context, the need for prosecutorial discretion was foremost.

*Goodwin* involved a criminal defendant facing misdemeanor charges for assault. Goodwin refused to plead guilty to the misdemeanor and requested a trial by jury. The prosecutor then reindicted Goodwin for a felony charge for the same incident. The Court in *Goodwin* squarely held that in the pretrial context the prosecutor has the discretion to increase charges after a defendant's exercise of a right *except* for the purpose of punishing that exercise. The question we must now face is what constraints remain on a prosecutor's discretion to increase charges outside the pretrial context. Though *Goodwin* does not explicitly address that question, when it is viewed in the context of *Blackledge* and *Bordenkircher* it provides an implicit but ample answer.

### B. The Posttrial Presumption

Goodwin contributed a phrase to the judicial vocabulary at least as unfortunate as *Blackledge*'s "prosecutorial vindictiveness": *Goodwin* described *Pearce* and *Blackledge* as creating a "presumption of vindictiveness." Thus, another way of stating the question implicitly answered by *Goodwin* is:

When does a presumption of vindictiveness arise?

A compelling answer to this question can be found by looking to the rationale *Goodwin* used to avoid a presumption in the pretrial context. The Court relied on *Blackledge* for the proposition that a presumption of vindictiveness should arise only in instances "that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27, 94 S.Ct. at 2102. With that in mind, the Court explained *Pearce* and *Blackledge* as follows:

> Both *Pearce* and *Blackledge* involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted. The decisions in these cases reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided. The doctrines of *stare decisis, res judicata,* the law of the case, and double jeopardy all are based, at least in part, on that deep-seated bias. While none of these doctrines barred the retrials in *Pearce* and *Blackledge,* the same institutional pressure that supports them might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question.

*Goodwin,* 102 S.Ct. at 2490–91. In distinguishing the pretrial context, the Court noted all of the compelling reasons a prosecutor might have for increasing charges pretrial. The court then stated, "Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.* at 2493. It is certainly true that once a prosecutor has finalized his charges enough that he or she is willing to go to trial on them, the needs for charging discretion tend to be much less, *see,* Michigan Note, *supra,* at 212–13, and the likelihood of vindictiveness much greater.

Finally, the Court distinguished the burden to the government from asserting the right at stake in *Goodwin*—the right to a jury trial instead of a bench trial—from that in *Pearce* and *Blackledge:*

> [B]efore either a jury or a judge the State must present its full case against the accused and the defendant is entitled to offer a full defense. As compared to the complete trial *de novo* at issue in *Blackledge,* a jury trial—as opposed to a bench trial—does not require duplicative expenditures of prosecutorial resources before a final judgment may be obtained. Moreover, unlike the trial judge in *Pearce,* no party is asked "to do over what it thought it had already done correctly." A prosecutor has no "personal stake" in a bench trial and thus no reason to engage in "self-vindication" upon a defendant's request for a jury trial. Perhaps most importantly, the institutional bias against the retrial of a decided question that supported the decisions in *Pearce* and *Blackledge* simply has no counterpart in this case.

102 S.Ct. at 2494 (footnotes omitted). The factors justifying a presumption in *Blackledge* and *Pearce* certainly exist in *any* posttrial assertion of a legal right.

Another answer to the question of when a presumption arises can be found by looking to the holding in *Goodwin;* no presumption of vindictiveness arises in the pretrial context. The obvious negative inference from this holding is that such a presumption *does* arise in the posttrial context. This conclusion is bolstered by looking at *Goodwin* relative to *Pearce, Blackledge,* and *Bordenkircher.* As the Court explained in *Goodwin,* it granted certiorari to clarify the scope of *Pearce* and *Blackledge.* 102 S.Ct. 2487. *Pearce* and *Blackledge* were cases involving a presumption of vindictiveness, and as *Goodwin* repeatedly noted, they were posttrial cases. *Bordenkircher* declined to apply a presumption and, as *Goodwin* noted, it was a pretrial case. Thus we have something considerably more powerful than a mere negative inference. *Goodwin* claimed to be partitioning the procedural universe between *Pearce* and *Blackledge,* the posttrial presumption cases, and *Bor-*

*denkircher,* the pretrial prosecutorial discretion case. Because *Goodwin* drew the partitioning line at trial, I can only conclude that *Goodwin* mandates a presumption of vindictiveness in the posttrial context.

In short, though *Goodwin* does not explicitly so hold, I believe it clearly stands for a dual proposition. Pretrial, no presumption of vindictiveness is justified. Posttrial, any "upping the ante" by the prosecutor after a defendant's exercise of a legal right gives rise to a presumption of vindictiveness. *Goodwin* harmonized *Blackledge* and *Bordenkircher* by drawing a bright line at trial. Pretrial, *Bordenkircher* reigns supreme; posttrial, *Blackledge* holds sway. This dual sovereignty should obviate the need to apply an unclear, unpredictable, unpalatable case-by-case analysis.

### C. Rebutting the Presumption

The final question is what to do with a presumption of vindictiveness once it arises. How can it be rebutted? It is at this point that the two misnomers in this doctrine combine forces to wreak havoc on careful analysis. The "presumption" is no more an evidentiary presumption than the parol evidence rule is an evidence rule. And "vindictiveness" refers not to the actual motive, but rather to the perception of a defendant considering asserting a legal right. The question in determining whether a "presumption" should arise might be stated: "Would a criminal defendant trying to decide whether to assert a legal right look at the facts of the instant case and presume the prosecutor had acted vindictively?" Thus, the question in dispelling a presumption is whether an unrelated party looking at the facts of the instant case would be persuaded that the prosecutor did not act vindictively. *The question most emphatically is not whether the prosecutor was actually vindictive.*

This conclusion gains firm support from *Goodwin.* First, *Goodwin* endorses the continuing vitality of the deterrence goal of *Pearce* and *Blackledge,* which makes the prosecutor's actual motive irrelevant. Second, in discussing rebuttal, *Goodwin*

calls for objective evidence, also making actual motive irrelevant. I will discuss these two points briefly.

*1. Deterrence Lives After* Goodwin.— *Pearce* and *Blackledge* were seeking to articulate a rule that would prevent prosecutors from deterring exercises of legal rights by criminal defendants by making them fearful of retaliation. In a deterrence scheme, the prosecutor's actual motive is irrelevant; the operative question is not the state of the *prosecutor's* mind, but rather, the state of mind of a *defendant* contemplating the exercise of a legal right. *Bordenkircher* recast this motivation as one solely of avoiding actual vindictiveness. *Goodwin,* while acknowledging the importance of actual vindictiveness in the *Bordenkircher*-ruled pretrial context, *see, e.g.,* 102 S.Ct. at 2492 n. 12; *id.* at 2494, also acknowledged that the deterrence rationale of *Pearce* and *Blackledge* survives in the posttrial context.

The most evident support for this position is the simple fact that *Goodwin* as a whole supports a *Blackledge* presumption in the posttrial context. *See supra* Part II.B. More specifically, the Court described the purpose of a *Blackledge* presumption as one "that would free defendants of apprehension of such a retaliatory motivation on the part of the prosecutor." 102 S.Ct. at 2490. Apprehension of a retaliatory motive can certainly exist in the factual absence of such a motive.

*2. Rebutting the Nonpresumption.*—The Court's view of the true nature of the "presumption" is made most clear by its discussion of what will, and will not, suffice to rebut the presumption. First, the Court repeatedly emphasized the irrelevancy of actual motive when a presumption of vindictiveness arises.

Unlike *Bordenkircher,* however, there is no evidence in this case that could give rise to a claim of actual vindictiveness; the prosecutor never suggested that the charge was brought to influence the respondent's conduct. The conviction in this case may be reversed only if a *pre-*

*sumption* of vindictiveness—applicable in all cases—is warranted.

102 S.Ct. 2493 (emphasis in original, footnote omitted). The Court further stated:

> In this case, however, the Court of Appeals stated: "On this record we readily conclude that the prosecutor did not act with actual vindictiveness in seeking a felony indictment." [*U.S. v. Goodwin*] 637 F.2d [250] at 252. Respondent does not challenge that finding. Absent a presumption of vindictiveness, no due process violation has been established.

*Id.* at 2494–95. Thus, even in the face of a factual finding, supported by the record, of no actual vindictiveness, a "presumption of vindictiveness" would still establish a due process violation. No mere evidentiary presumption concerned with the presence or absence of actual vindictiveness would function in that manner.

This conclusion is further reinforced by the indications the Court gave of what would rebut the presumption. The presumption when it arises is based on *Pearce* and *Blackledge.* As the *Goodwin* Court noted, the *Pearce* "Court applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Id.* at 2489. In discussing *Blackledge,* the Court noted that "[t]he presumption again could be overcome by objective evidence justifying the prosecutor's action." *Id.* at 2490 n. 8. The *Goodwin* Court also quoted *Blackledge'*s example of *Diaz,* where "it was impossible to proceed in the more serious charge at the outset." *Id.* (quoting *Blackledge,* 417 U.S. at 29 n. 7, 94 S.Ct. at 2103 n. 7). The *Goodwin* Court summarized *Blackledge* and *Pearce* as establishing a presumption that could not be rebutted "unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights." *Id.* at 2488.

If the presumption of vindictiveness were intended to be a mere evidentiary presumption of actual vindictiveness, it would relate to that very subjective, "complex and diffi-cult to prove," *id.* at 2489, question of motive. In that case, there would be no point in restricting rebuttal evidence to objective evidence—subjective evidence is perfectly acceptable to establish subjective motive. There certainly would be no point in requiring a showing that "the increased charges *could not have been brought* before the defendant exercised his rights." *Id.* at 2488 (emphasis added). The only point of such restrictions would be to dispel any apprehension of vindictiveness. Indeed, I believe such a conclusion to be inescapable after *Goodwin.*

### D. Goodwin meets Krezdorn

In short, the rule for the posttrial context can be easily stated after *Goodwin.* In the posttrial context, a so-called presumption of vindictiveness arises any time the prosecutor "ups the ante" after a defendant exercises a legal right. Upping the ante certainly includes a possibility of increased sentence, but need not be limited to that. *See Blackledge,* 417 U.S. at 29 n. 6, 94 S.Ct. at 2103 n. 6. The presumption may be rebutted only by objective evidence showing that the increase charges could not have been brought until after the defendant exercised the legal right.

With this rule in mind, it is a simple matter to dispose of this case. Appellee Krezdorn successfully appealed his first conviction. The prosecutor then upped the ante by reindicting for a more serious crime. Thus a presumption arises. The only explanation for the increased charges was that the panel opinion in Krezdorn's first appeal, in dicta, reminded the prosecutor of a long-standing rule of evidence. This certainly and definitely does not constitute objective evidence that the charges could not have been brought before Krezdorn's first successful appeal. Due process, therefore, requires that the additional charges be dismissed and the decision of the district court be affirmed.

### CONCLUSION

As is clear by now, my analysis of the problem of prosecutorial vindictiveness differs considerably from that of the majority of the Fifth Circuit. The result I would

reach in this case plainly differs. The underlying concerns also differ. I place more emphasis on preventing prosecutorially induced apprehension of vindictiveness so that a criminal defendant may freely exercise the rights granted him by law. The majority places more emphasis on the prosecutor's need for discretion in charging and limits that discretion solely by prohibiting actual vindictiveness.

Because the majority's rule places upon defendants the "grisly choice," *see supra* note 1, I believe it is bad policy and would dissent solely upon that ground. More important, however, is my firm belief that the Fifth Circuit is being less than true to the scheme established by *Goodwin.* I believe *Goodwin,* though not totally explicit, establishes a pretrial/posttrial distinction. In the posttrial arena, due process and the Supreme Court command us to be most solicitous of the possibility of an apprehension of vindictiveness in order to preserve the integrity of the protections imbedded in our criminal justice system. The majority appears to me to be unduly solicitous of the expediency required to secure criminal conviction. I believe that *Goodwin,* the Constitution, and fundamental notions of fairness dictate that expediency not be our first priority. Accordingly, I respectfully dissent.