Hollis G. BYRD, Petitioner-Appellant,

v.

Dan V. McKASKLE, Acting Director
Texas Department of Corrections,
Respondent-Appellee.

No. 83–2049.

United States Court of Appeals,
Fifth Circuit.

June 8, 1984.

**1134**

Garland D. McInnis, Jr., Houston, Tex. (court-appointed), for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Hollis G. Byrd is in the custody of the State of Texas pursuant to a 30-year sentence resulting from his 1974 conviction for "robbery with firearms." Tex.Penal Code Ann. art. 1408 (Vernon 1925). On appeal from the district court's denial of habeas corpus relief, Byrd presents this Court with three claims of alleged constitutional deprivation. Specifically, Byrd contends that he was subjected to prosecutorial vindictiveness, that his due process rights were violated when two jurors from a former trial testified at the punishment phase of his 1974 trial, and that he was deprived of due process when the jury at his 1974 trial was informed of a prior conviction and probated sentence. We affirm the district court's denial of relief.

**I. BACKGROUND**

In 1964, Byrd pled guilty to robbery in the state district court in Potter County, Texas (hereinafter referred to as Potter County conviction). Byrd received a ten year sentence, which was suspended, and he was placed on probation for a period of ten years. One month later, Byrd's probation was revoked and he was sentenced to confinement for a period of not less than five years nor more than ten years. Byrd was not represented by counsel at the probation revocation/sentencing hearing.

Byrd was released from custody in 1972 and, soon thereafter, committed another robbery. In April 1972, Byrd was indicted and convicted for "robbery by assault," based upon an indictment that made no mention of the use of a firearm. The controlling 1925 Texas Penal Code at that time provided:

> If any person by *assault*, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for *life, or for a term of not less than five years;* and when a *firearm* or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be *death or by confinement in the penitentiary* for any term not less than five years.

Tex.Penal Code Ann. art. 1408 (Vernon 1925) (emphasis added).[1] Byrd's sentence

---

1. Certain changes in Texas law after Byrd's 1972 indictment bear heavily upon our resolution of Byrd's prosecutorial vindictiveness claim. Hence, we set forth these changes in Texas law in some detail.

 In 1974, the Texas Penal Code was amended and the provisions of article 1408 of the 1925 Texas Penal Code were separated into four sections. Under the new 1974 Texas Penal Code, robbery by assault (without a firearm) was defined as follows:

 (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

 (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
 (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.
 (b) An offense under this section is a felony of the second degree.
 3 Tex.Penal Code Ann. § 29.02 (Vernon 1974). As a second degree felony, robbery by assault under the 1974 Texas Penal Code exposed a defendant to the following realm of punishment:
 (a) An individual adjudged guilty of a felony of the second degree shall be punished by confinement in the Texas Department of Corrections for any term of not more than 20 years or less than 2 years.

was enhanced by the 1964 Potter County conviction; he received life imprisonment. Byrd then sought state habeas corpus relief from his life sentence in the state district court in which his 1972 robbery by assault trial was held. Byrd alleged that the Potter County conviction was improperly used for enhancement since he was not represented by counsel at the probation revocation hearing. The state district court granted Byrd a new trial in December 1972.

In June 1974, Texas again moved against Byrd for the 1972 robbery. A new indictment was obtained which did not allege "robbery by assault" (without the use of a firearm). Though the 1974 indictment grew out of the identical facts that were available to the State in 1972, the 1974 indictment alleged that the robbery was accomplished with the aid of a firearm. Byrd was tried and convicted on the "robbery with firearms" charge under the same article 1408 of the 1925 Texas Penal Code. Byrd elected,[2] however, to be punished under the then new 1974 Texas Penal Code, which set the limits of imprisonment for robbery with firearms at five years to life. *See*, note 1, *supra.*

At the punishment phase of the 1974 trial, the jury was permitted to be informed of Byrd's 1964 Potter County conviction. The jury was also informed that Byrd was placed on probation for the Potter County conviction, but was not informed of the later revocation of Byrd's probation. Furthermore, at the punishment phase, the State offered as witnesses two jurors from the 1972 trial to testify as to Byrd's character. The 1974 jury sentenced Byrd to 30 years' imprisonment, the conviction and sentence were affirmed on direct appeal, and, after exhausting his state remedies, Byrd commenced this habeas corpus proceeding in the federal district court. The magistrate recommended that the writ be granted on the basis of Byrd's claim that the prosecutor had exercised impermissible vindictiveness in reprosecuting on a more serious offense than that involved in the original 1972 indictment. The federal district court disagreed, and after directing the magistrate to make recommendations on Byrd's two remaining claims, rendered judgment dismissing the action. This appeal followed.

## II. PROSECUTORIAL VINDICTIVENESS

■ The most serious of Byrd's attacks upon the federal district court's judgment alleges that Byrd's due process rights were violated by the prosecutor's vindictive actions in "upping the ante" in the 1974 indictment—i.e., changing the charge from robbery by assault (without firearms) to robbery with a firearm. According to Byrd, the prosecution vindictively decided to increase the charges in an attempt to

---

(b) In addition to imprisonment, an individual adjudged guilty of a felony of the second degree may be punished by a fine not to exceed $10,000.

1 Tex.Penal Code Ann. § 12.33 (Vernon 1974). Under the 1974 Texas Penal Code, robbery with a firearm was defined in the following terms:

(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:

 (1) causes serious bodily injury to another; or

 (2) uses or exhibits a deadly weapon.

(b) An offense under this section is a felony of the first degree.

3 Tex.Penal Code Ann. § 29.03 (Vernon 1974). A violation of section 29.03 would subject the defendant to punishment for a first degree felony, which carried the following realm of punishment:

An individual adjudged guilty of a felony of the first degree shall be punished by confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 5 years.

1 Tex.Penal Code Ann. § 12.32 (Vernon 1974).

**2.** Byrd was permitted to elect to be punished under the 1974 Texas Penal Code pursuant to legislative authorization. 1973 Texas Acts, chap. 399 § 6(c). Section 6(c) provides:

In a criminal action pending on or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins.

punish Byrd for pursuing state habeas corpus relief. We disagree.

The law in this Circuit on prosecutorial vindictiveness is well developed, the most recent explication of which appears in *United States v. Krezdorn*, 718 F.2d 1360 (5th Cir.1983) (*en banc*). In *Krezdorn*, having discussed the historical underpinnings of the doctrine of prosecutorial vindictiveness,[3] the *en banc* court set forth the test for resolution of a claim of prosecutorial vindictiveness. Writing for the Court, Chief Judge Clark stated:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision al-

tered that initial exercise of the prosecutor's discretion.

*Id.* at 1365. Byrd's claim of prosecutorial vindictiveness must be examined according to these principles.

The threshold question in Byrd's case, of course, is whether the 1974 indictment subjected him to a more severe charge than the charge contained in the 1972 indictment. Our resolution of this issue requires this Court to examine the change in charges from Byrd's viewpoint. *See, Blackledge v. Perry*, 94 S.Ct. at 2102. As the Supreme Court noted in *Blackledge*, due process is violated by a possibility of increased punishment, on retrial, that poses a realistic likelihood of vindictiveness. Actual vindictiveness need not be shown, since the fear alone of vindictiveness may deter a defendant's exercise of appeal or collateral attack. *Id.* at 2102.

■ It is to be remembered that Byrd was convicted in 1972 of robbery by assault under the 1925 Penal Code, art. 1408; Byrd's sentence was enhanced by the Potter County conviction and he received a life sentence. By pursuing his proper collateral remedies (state habeas corpus), Byrd, in late 1972, was granted a new trial. His benefit on retrial was two-fold. First, Byrd knew the maximum penalty was life imprisonment,[4] and was then aware that the odds favored a lesser sentence, since the enhancement charge (Potter County conviction) on state habeas corpus review had been set aside. Second, Byrd knew that since the new trial would take place after January 1, 1974, Byrd was in a position to elect[5] to be sentenced under the then new 1974 Penal Code, which set the maximum penalty for robbery by assault (without firearms) at twenty years. *See,* Note 1, *supra.*

However, neither of what will be characterized as Byrd's expectations were borne out. Perhaps realizing that, if prosecuted

---

3. *See, North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

4. *See,* note 1, *supra.*

5. *See,* note 2, *supra.*

for robbery by assault (without firearms), Byrd could elect a maximum punishment exposure of not more than twenty years confinement (under the new 1974 Penal Code), the prosecutor secured an indictment for "robbery with firearms," again to be enhanced by the 1964 Potter County conviction. Under the old 1925 Texas Penal Code, robbery with firearms carried a maximum penalty of death. *See*, Tex.Penal Code Ann. art. 1408 (Vernon 1925). The death penalty, however, had been declared unconstitutional in June 1972. *See*, *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Therefore, because of *Furman* only, a conviction for the offense of robbery with firearms carried the same maximum penalty under the old act (1925 Penal Code) as did robbery by assault (1925 Penal Code); both maximum punishments being life imprisonment. Furthermore, Byrd's statutory right to elect punishment under the new 1974 Penal Code was rendered meaningless because of the new charge of robbery with firearms: under either statute he would face anywhere from five years to life. *See*, note 1, *supra*.

The question of whether Byrd was subjected to an increase in the severity of the charges is arguable. On the one hand, due to *Furman*, the new charges subjected Byrd to no more punishment than he had previously faced and, in fact, received. That punishment was life imprisonment. Even the range of punishment—five years to life—was the same. On the other hand, the prosecutor's action could be deemed to increase the severity of the charges to which Byrd was exposed: as his retrial was not to be held until after the effective date of the 1974 Penal Code, Byrd was vested with the statutory right (if convicted) to elect the new Act's punishment for the offense for which he was already indicted, robbery by assault (without firearms). *See*, note 2, *supra*. Under the new 1974 Penal Code, this offense is punishable by a term of not less than two, and no more than 20 years, a significant reduction in his maximum allowable sentence.

If the severity of the charges in the instant case (the new indictment for robbery with firearms) is to be measured by comparison with the severity of the charges in the prior case (the old indictment for robbery with*out* firearms) at the time jeopardy attached for Byrd on that old indictment, it will be apparent that there has been no change in the severity of the charges. The range of punishments (five years to life) in each is virtually identical.

However, if the severity of the charges in the instant case (the new indictment for robbery with firearms) is to be measured by comparison with the severity of the charges in the prior case (the old indictment for robbery *without* firearms) at any time *after* the effective date of the new 1974 Penal Code, it will be apparent that a significant change in the severity of the charges has occurred. Under the new charge, the range of punishment is five years to life. Under the old charge—as modified by the new 1974 Penal Code—the range of punishment is two years to twenty years. Since we are admonished to view the issue from Byrd's perspective, we find the charge more severe. In Byrd's view, he was deprived of his right to elect punishment under the 1974 Penal Code for robbery by assault (without firearms) and was thereby deprived of the possibility of confinement for a maximum twenty years and, once again, faced the possibility of confinement for life.

Nevertheless, this does not end this Court's inquiry. That more severe charges have been employed is not dispositive, for "the 'Due Process Clause' is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of vindictiveness." *Blackledge v. Perry*, 94 S.Ct. at 2102.

Recognizing this principle in *Krezdorn*, the *en banc* court stated:

If any objective event or combination of events of those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive de-

sire to deter or punish appeals, no presumption of vindictiveness is created. *United States v. Krezdorn,* 718 F.2d at 1365.

So the question arises: Was there any objective event or combination of events which should indicate that the prosecutor was motivated by a purpose other than a vindictive desire to deter or punish appeals? As noted, because of the change in the 1974 Texas Penal Code, robbery by assault (without firearms) carried a much less severe sentence (20 years) than that contained in the 1925 Texas Penal Code (life). This objective event—the Texas Legislature's amendment of the Texas Penal Code—in combination with the other events in Byrd's proceedings, should have indicated to the reasonable minded defendant that the prosecution's decision to increase the charge was motivated not by a desire to "punish the pesky defendant," but by a desire to expose Byrd to the same maximum sentence he faced in the 1972 trial—life imprisonment. Such a reasonable motive on the part of the prosecution could not be characterized as vindictive.

For these reasons, Byrd's prosecutorial vindictiveness claim must fail. Byrd fails to establish a presumption of prosecutorial vindictiveness since the events in his case should indicate to the reasonable minded defendant that the prosecution's decision to increase the severity of the charges was motivated by a legitimate, non vindictive purpose. Certainly, we cannot describe as vindictive, the prosecution's attempt to expose Byrd to the same range of punishment he faced at the original trial.

## III. THE REMAINING ISSUES

### A. The Admissibility of Byrd's 1964 Conviction and Probated Sentence

 Byrd maintains he was denied due process when the jury learned of his 1964 felony conviction and probated sentence, even though the jury did not learn that the probation was later revoked at a hearing in which Byrd allegedly was not represented by counsel. It is well settled that a defendant has a constitutional right to counsel at a joint parole revocation/sentencing proceeding. *See, Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), *held retroactive by, McConnell v. Rhay,* 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). As the magistrate's opinion notes, however, Byrd exhausted the instant claim—that he was deprived of due process when the jury learned of the 1964 conviction and probated sentence—in his most recent state habeas corpus action, (cause number 13,754) obtaining an adjudication on the merits that there had been no denial of counsel at the 1964 proceeding. *See,* Record, Vol. I at 9. After conducting an evidentiary hearing, the state trial court entered fact findings that Byrd was advised of his right to counsel, but waived his right at the parole revocation hearing. These findings must be afforded a presumption of correctness under 28 U.S.C. § 2254(b). *See, Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). Accordingly, Byrd has failed to demonstrate, as a factual matter, that he did not waive his right to counsel.

Nevertheless, it was established that Byrd was represented by counsel at his 1964 prosecution and conviction. The law is clear that Byrd's 1964 conviction could be brought to the attention of the jury, even if the subsequent revocation of the probated sentence was invalid. The conviction remained valid for impeachment purposes under Texas law; *see* 3A Tex.Code Crim.Pro. § 37.07(3)(a) (Vernon 1974), and no due process problem arose through the introduction of the conviction and probated sentence. *See, Langston v. Estelle,* 544 F.2d 1331 (5th Cir.1977).

### B. Former Jurors Testify

 Byrd maintains that he was deprived of his due process right to a fair trial when two jurors from his 1972 robbery by assault trial were permitted to testify as character witnesses at his 1974 robbery by firearms trial. The record indeed indicates that two former jurors, who had no independent knowledge of Byrd oth-

er than that received while jurors at his 1972 trial, were permitted to take the stand and testify that they were familiar with Byrd's character in the community and that his character was bad. *See, Record,* State Trial Transcript, Vol. III, at 598–606. However, no objection to the admissibility of this evidence was made by Byrd's counsel. While Byrd's counsel made one minor objection to the form of the prosecutor's questions and once leveled a hearsay objection to the former juror's testimony, the testimony's admissibility or the juror's qualifications to testify were never objected to by defense counsel. Indeed, Byrd concedes that the Texas Court of Criminal Appeals expressly refused to consider this issue since Byrd failed to make an objection to the testimony in terms of federal constitutional law. *See,* Record, Vol. I at 89. In light of Byrd's failure to object to the challenged testimony, we need not address the merits of this issue. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

## IV. CONCLUSION

We have thoroughly reviewed the record in light of Byrd's contentions and have concluded that he was not the subject of prosecutorial vindictiveness, was not deprived of due process by the introduction of his prior conviction and probated sentence, and failed to properly preserve the issue on the former jurors' testimony for review. Accordingly, the district court's judgment is affirmed in all respects.

AFFIRMED.