United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 11, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-20324

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GLEN M. DAVIS, also known as Glen Davis,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-99-CR-90-1

Before SMITH, PRADO, and PICKERING, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Appellant Glen Davis was convicted on two counts: 1) conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846; and 2) possession with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 18 U.S.C. § 2.

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

-1-

Davis was sentenced to two concurrent terms of life imprisonment and was fined $25,000.00. He now appeals his conviction and sentence. For the following reasons we affirm the conviction and sentence.

**Factual Background**

On January 27, 1999, Houston Police Officer Dennie Harmon, who was working at the Houston airport, noticed a female who appeared "frantic." This woman, later identified as Aldrenna Wade, made successive phone calls without talking to anyone. After Wade went through security and while she waited at the gate, Officer Harmon observed that she seemed "real nervous." Wade then boarded the plane.

Officer Harmon, who had noted Wade's name on her baggage, brought a trained canine to sniff Wade's checked luggage. The canine alerted to Wade's bags. Officer Harmon found Wade and asked her to get off the plane. While Officer Harmon was escorting Wade off the plane, an African-American male, later identified as Davis, walked off the plane past Wade and Officer Harmon.

A consensual search of Wade's luggage revealed thirteen kilograms of cocaine. Wade first told investigators that she was carrying the cocaine for her cousin, but later stated that Davis had given her the cocaine. Wade agreed to participate in a controlled drug transaction, in which she would fly to Cleveland,

Ohio, and attempt to deliver the cocaine there.  The controlled delivery was unsuccessful.  However, agents of the Drug Enforcement Administration ("DEA") were still able to use Wade's statements to obtain an arrest warrant for Davis and a search warrant for a house at 15627 Rio Del Sol in Houston, where they believed Davis lived.  DEA agents went to the house and watched Davis leaving the driveway in his car.  An agent followed Davis but could not stop him.  After a chase involving several DEA agents, Davis was arrested and his car was searched.  The agents found a copy of Wade's criminal complaint in the car.  The agents later searched the house and found a Nextel cellular phone bill for a number Wade had called as part of the controlled sale, and a drug ledger labeled "Glen."

The DEA agents obtained a second warrant to search the house after Wade informed them that Davis kept records of his drug transactions on his computer.  The agents then confiscated Davis's computer and disks from the Rio Del Sol residence.

**Procedural History**

After a jury trial, Davis and Wade were found guilty on one count of aiding and abetting each other in the possession of, with the intent to distribute, more than five kilograms of cocaine.  Davis appealed that conviction.  The Fifth Circuit reversed Davis's conviction and remanded his case because the trial judge did not adequately warn Davis about the dangers of

pro se representation.  After Davis's case was remanded, the U.S. Attorney added a superseding indictment charging Davis with possession with intent to distribute more than five kilograms of cocaine, and with conspiracy to possess with intent to distribute more than five kilograms of cocaine.  After a second trial in which he was represented by counsel, Davis was convicted again.  Davis timely appealed this second conviction.

On appeal, Davis argues the district court erred by: 1) not granting his motions to suppress[2] the search warrants and his motion to quash his arrest warrant; 2) not granting his motion to dismiss the superseding indictment; 3) restricting cross-examination; 4) enhancing his sentence based on a prior felony drug offense; and 5) failing to ask him whether he admitted or denied the prior convictions listed in his enhancement.  Davis also asserts that he is entitled to resentencing because the prosecution did not serve him or his counsel with the information of enhancement.

**Motions**

### Waiver of motions to suppress

Davis contends the district court should have conducted an evidentiary hearing on his motions to suppress the evidence

---

[2] In his brief, Davis refers to a single "motion to suppress all evidence seized from searches that occurred on February 4, 1999 and March 12, 1999."  Appellant's Br. at 11.  However, the trial record includes a separate motion to suppress for each date.  4 R. at 44, 48.

gathered in the searches of the Rio Del Sol residence and on his motion to quash his arrest warrant. Before addressing the merits of Davis's suppression argument, we address the government's assertion that Davis waived his right to contest the suppression on appeal. The government argues that Davis may not raise this issue on appeal because 1) the issue was not decided by the trial judge in open court and 2) Davis did not re-urge the motions at trial. The government's contention that the motions were not ruled upon in open court is plainly wrong as the record shows that both motions were denied in open court.[3] Having received a ruling, Davis did not need to re-urge the motions.

The government next contends that Davis waived his right to argue the suppression issue in his present appeal because he failed to raise the issue during his first appeal. We have held that:

> [a] legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date.

*United States v. Becerra*, 155 F.3d 740, 757 (5th Cir. 1998)

---

[3] 9 R. at 55 to 59 ("(Open court, defendant present) . . .[prosecutor]: It was my understanding there were two motions to suppress filed by the defendant[.] THE COURT: . . . one had to do with suppress [sic] evidence executed on March 12th, I believe the other had to do with the February 4th, and both of those are denied.")

(quoting *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)).  Davis does not claim to have raised this issue in his first appeal, nor could we find any reference to it in either of his briefs from that appeal.[4]  Further, Davis does not allege any reason he could not have raised the issue in his first appeal. We note that although his first conviction was overturned because he was not fully warned about the dangers of self-representation, he was represented by an attorney during his first appeal.

Davis argues that he may appeal the suppression issue regardless of whether he raised it in his first appeal.  Davis cites a portion of the dissenting opinion in *United States v. O'Keefe*,[5] to support the proposition that an issue may be raised in a later appeal even if it was not raised in a previous appeal. The portion of the *O'Keefe* dissent that Davis cites is itself taken from MOORE'S FEDERAL PRACTICE.[6]  However, the citation refers to an *interlocutory* appeal, not to an appeal of a final judgment.

---

[4] Although the briefs from Davis's first appeal are not part of the record, we may take judicial notice of them.  *See* FED. R. EVID. 201(b); *see also MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) (affirming summary judgment based on the district court's judicial notice of pleadings, files, and proceedings in a separate matter); *United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) ("[a]n appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court").

[5] 169 F.3d 281, 283 (5th Cir. 1999) (Dennis, J., dissenting).

[6] 18 MOORE'S FEDERAL PRACTICE § 134.20 (3d ed. 1988).

Davis's first appeal was not an interlocutory appeal, but was an appeal from a final judgment. Therefore, we apply the rules relating to final judgment appeals and hold that Davis has waived his right to appeal the denial of his motion to suppress.

**Motion to quash the arrest warrant**

Davis also asserts that the district court erred by not granting his pro se[7] motion to quash the arrest warrant. Davis fails to explain how the district court erred on this issue.[8] In any case, this issue is now moot because the relief sought in the motion to quash – pre-trial release – can no longer be granted. *See First Ind. Fed. Sav. Bank v. F.D.I.C.*, 964 F.2d 503, 507 (5th Cir. 1992)(issue was moot where there was no meaningful relief available that would redress the alleged harm). Therefore, we do not examine Davis's argument regarding his motion to quash the arrest warrant.

**Prosecutorial vindictiveness**

Davis argues that the district court erred by refusing to grant his motion to dismiss the superceding indictment.[9] Davis

---

[7] When Davis filed his pro se motion, he was represented by counsel. For the purposes of argument, we assume the motion was properly filed in the district court.

[8] Although Davis in his brief purports to address both types of motions, he only mentions the motion to quash in passing.

[9] Davis does not state whether the motion was brought to the attention of the trial court. The docket sheet lists the motion as terminated on December 12, 2002, but we could find no mention of the motion on the record. For the purposes of argument, we

contends that the prosecution acted vindictively by superseding the original one-count indictment against him with a two-count indictment that included an additional conspiracy charge. We review a district court's factual findings on prosecutorial vindictiveness for clear error and review the underlying legal principles applied by the district court *de novo*. *United States v. Johnson*, 91 F.3d 695, 698 (5th Cir. 1996).

To determine whether a prosecutorial action was vindictive "the court must examine the prosecutor's actions in the context of the entire proceedings." *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983)(en banc). There is no presumption of vindictiveness if in the context of the entire proceedings "any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision . . . was motivated by some purpose other than a vindictive desire to deter or punish appeals . . . ." *United States v. Wells*, 262 F.3d 455, 466-67 (5th Cir. 2001) (quoting *Krezdorn*, 718 F.2d at 1365). The defendant has the burden of proving, by a preponderance of the evidence, prosecutorial vindictiveness. *Krezdorn*, 718 F.2d at 1365.

In this case, the government explained it had added the conspiracy charge on the superseding indictment as a way to

---

assume the motion was brought to the attention of the trial court and was denied.

"overcome issues of admissibility as to certain testimony, not to punish Davis for being successful on appeal." This explanation is reasonable because the added conspiracy charge allowed the government greater flexibility in introducing witness testimony about other drug-related incidents involving Davis. Davis presents no argument to refute the government's explanation. Instead, the government has presented a plausible explanation for the superseding indictment. Therefore, the trial court did not err in failing to grant Davis's motion to dismiss for prosecutorial vindictiveness.

**Recross-examination**

Davis contends that the district court erred by not allowing him to recross-examine two government witnesses – Officer Harmon and a co-conspirator witness named Anita Shoemate. We review a trial court's restriction of the scope of cross-examination for an abuse of discretion. *United States v. Alexius*, 76 F.3d 642, 644 (5th Cir. 1996). "In order to show an abuse of discretion related to the limitations placed on cross-examination, a defendant must show that those limitations were clearly prejudicial." *United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998).

The right to recross-examine a witness is limited to situations in which a "new matter is brought out on re-direct examination." *Hale v. United States*, 435 F.2d 737, 750 (5th Cir.

1970).  Further, this right is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation."  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

### Examination of Officer Harmon

At trial, Officer Harmon testified about observing Aldrenna Wade acting suspiciously at the airport and about bringing a dog to sniff Wade's luggage.  On cross-examination, Officer Harmon admitted that she did not originally find Wade to be a credible person and that Wade had originally told her that a cousin, rather than Davis, had bought her plane ticket.  The government conducted a brief redirect examination and then Davis requested the opportunity to recross-examine.  The trial court denied Davis's request.

Davis fails to identify a line of questioning that he would have pursued if he had been permitted recross-examination. Instead, Davis argues only that Wade's credibility was critical to the case against him.  While her credibility was certainly a key issue, Davis does not suggest what new information a jury would have learned from a recross-examination of Officer Harmon. Consequently, Davis has failed to demonstrate that he was prejudiced by the district court's denial of recross-examination. *See United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998) ("[i]n order to show an abuse of discretion related to the

limitations placed on cross-examination, a defendant must show that those limitations were clearly prejudicial."). The trial court did not abuse its discretion by refusing to allow repetitive questioning of Officer Harmon.

### Examination of Anita Shoemate

Anita Shoemate was a hostile witness called by the government. She testified that she had once carried money from Ohio to Texas for Davis. On cross-examination of Shoemate, Davis suggested that the money Shoemate transported was from an insurance claim. Shoemate also testified that at the time she carried the money she did not believe Davis was a drug dealer. On redirect, the government elicited from Shoemate that Davis might have hidden his drug activities from her and that the money Davis gave her - rolls of cash tied up in a rubber band - was unlikely to have been given to him by an insurance company.

Again, Davis fails to point to any new information brought out in redirect examination that would have given him a right to recross-examine Shoemate. The government's redirect examination did not present any new information, rather it addressed the problems with the insurance-payment explanation that Davis presented on cross-examination. Aside from reiterating the insurance-payment explanation, there was nothing for Davis to address on recross-examination. The district court did not abuse its discretion by refusing to allow repetitive questioning.

**Sentence enhancement**

Davis argues that the district court erred by imposing a life sentence pursuant to 21 U.S.C. § 841(b)(1)(A).[10]  We review "the application of sentencing provisions and the sentencing guidelines de novo and the facts supporting those applications for clear error."  *United States v. Green*, 293 F.3d 886, 894 (5th Cir. 2002).

In sentencing Davis to life imprisonment, the district court relied on its finding that Davis had two prior convictions of a felony drug offense.  Section 841(b)(1)(A) mandates that "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment . . . ."  21 U.S.C. § 841(b)(1)(A).

However, Davis contends that the district court erred by considering one of his prior convictions from Ohio a "felony drug offense" for sentencing purposes.  A "felony drug offense" is defined as an offense "punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs. . . ."  21 U.S.C. § 802(44).

In 1993, Davis was convicted of violating OHIO REV. CODE §

---

[10] The government contends that Davis waived this issue because he did not brief it on appeal.  For purposes of this discussion, we assume that he did not waive it.

2925.11(A).[11]  At the time Davis was convicted, a violation of §
2925.11(A) was punishable by imprisonment for more than one year
and was therefore a "felony drug offense" within the meaning of
21 U.S.C. § 802(44).  However, in 1996, Ohio reclassified §
2925.11 and reduced the term of punishment to six to twelve
months.  Therefore, a conviction under the revised version of §
2925.11 is not a "felony drug offense."  Davis argues that his
federal sentence should be based on the revised version of §
2925.11 and not on the version under which he was convicted.

In support of his argument, Davis cites *United States v.
Morton*, 17 F.3d 911 (6th Cir. 1994).  In *Morton*, the Sixth
Circuit examined whether a prior state conviction was a "serious
drug offense" for sentencing purposes, when the state statute
under which the defendant had been convicted had been later
changed to mandate a lesser sentence.  *See id*.  The state statute
at issue in *Morton* did not state whether it was retroactive.  *See
id*. at 915.  *Morton* held that the trial court should have based
its sentencing determination on the version of the state statute
in effect at the time of federal sentencing, rather than the
version in effect at the time of state conviction.

In *United States v. Hinojosa*, this court expanded upon
*Morton*, to explain how non-retroactive statutory revisions should

---

[11] In 1993, OHIO REV. CODE § 2925.11(A) stated that "[n]o
person shall knowingly obtain, possess, or use a controlled
substance."

be considered for sentencing purposes. *See United States v. Hinojosa*, 349 F.3d 200 (5th Cir. 2003). *Hinojosa* held that where a state statute is revised after a defendant's state conviction, the federal sentencing court must make its sentencing determination based on the punishment that the defendant would receive if he were to be currently sentenced in state court for the crime of conviction. *See id.* at 205. In *Hinojosa*, the state statute under which Hinojosa was convicted was later revised, but the revision specifically stated that it was not retroactive for offenses committed before it became effective. *Id*. Therefore, Hinojosa's federal sentence was based on the unrevised version of the state statute because that was the version of the statute under which Hinojosa would have been sentenced in state court.

To apply *Hinojosa* to Davis's sentencing determination, we must determine what punishment Davis would receive if he were to now be sentenced by an Ohio court for his 1993 offense. The state statute under which Davis was convicted, § 2925.11, does not explain whether it is retroactive. However, the Ohio Supreme Court explicitly determined that the sentencing amendments to § 2925.11 did not apply to anyone whose offense of conviction occurred before the amendments became effective in 1996. *See State v. Rush*, 697 N.E.2d 634, 636 (Ohio 1998). Because Davis's offense of conviction occurred in 1993, an Ohio court examining his case today would sentence him under the older version of §

2925.11.  Thus, the district court was correct to find that Davis's 1993 Ohio conviction is a "felony drug offense" for sentencing purposes.  Because this finding was correct, and since Davis does not contest the other sentencing findings, there was no error in the district court's imposition of a life sentence pursuant to 21 U.S.C. § 841(b)(2)(A).

**Service of information and inquiry under 21 U.S.C. § 851(b)**

Davis asserts that he should be resentenced because of two alleged violations of the technical requirements of 21 U.S.C § 851.  First, he argues that the government violated 21 U.S.C. § 851(a)(1) by failing to serve him or his counsel with the information of sentencing enhancement.  Second, he contends that the district court violated 21 U.S.C. § 851(b) by failing to engage him in a colloquy at sentencing.

### Information of sentencing enhancement

Davis contends that he was not properly served with the information of sentencing enhancement, as required by § 851(a)(1), before sentencing in his second trial.  Because Davis did not raise this claim in the district court, we review it for plain error only.  *See United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003).

The record includes a copy of the information of enhancement from Davis's second trial, along with a certificate of service on his attorney of record for his second trial, Kenneth W. McGuire.

-15-

Davis does not argue that this certificate was inaccurate, or that McGuire was not his attorney of record at the time.

Instead, Davis misleadingly supports his claim by citing a certificate that shows service on Davis's attorney from his first trial. This certificate is part of the information of enhancement from Davis's first trial. The record is clear that part of the first enhancement (and thus the first certificate of service) was merely attached as an exhibit to the information of enhancement from Davis's second trial. Because the record shows that the second information, which contained part of the first information as an exhibit, was properly served on Davis's counsel, there was no violation of § 851(a)(1).

**Section 851(b) colloquy**

Davis argues that the district court erred by failing to engage him in a § 851(b) colloquy regarding the government's information of enhancement. To analyze this claim we determine whether the trial court substantially complied with § 851(b), and if no such compliance occurred, whether that error was harmless. *See Fragoso*, 978 F.2d at 902-03.

Section 851(b) requires that after conviction but before pronouncement of sentence "the court shall . . . inquire of [the defendant] whether he affirms or denies that he has been previously convicted as alleged in the information . . . ." 21 U.S.C. § 851(b). The sentencing court is also required to

"inform [the defendant] that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." *Id.*

Neither party contests that the district court failed to engage in the formal two-part colloquy.[12] However, Davis has not shown how this failure harmed him.[13] Section 851(e) prohibits a defendant from challenging a prior conviction "which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The most recent of Davis's convictions listed on the information occurred in 1994, and the information was served in 2002 - well beyond the five-year time limit of the statute. Thus, Davis would not have been permitted to challenge the convictions. We have held that it is harmless error for a district court to fail to follow the dictates of § 851(b) when a prior conviction occurred more than five years before the information was filed. *United States v. Fragoso*, 978 F.2d 896, 902 (5th Cir. 1992). Therefore, though the district court erred by failing to hold a § 851(b) colloquy,

---

[12] During sentencing the district court addressed Davis: "you were aware, Mr. Davis, that you had these criminal charges, convictions the first time the trial occurred back in 1999 or 2000, were you not?" (4 Supp. R. 81-82). Davis then responded, "I broke the law, yeah, I guess I would --" *Id.* This exchange gave Davis the opportunity to contest his prior convictions, but for the purposes of argument we will assume that it did not meet the requirements of § 851(b).

[13] Davis argues that there is a valid basis to challenge the convictions, but does not suggest what that basis might be.

such error did not affect Davis and was harmless.

**Conclusion**

For the foregoing reasons, we AFFIRM Davis's conviction and sentence.

AFFIRMED.